UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| GREGORY KROUPA and WENDY KROUPA,<br><br>    Plaintiffs,<br><br>  vs.<br><br>UNITED STATES FARM SERVICE AGENCY; FRANK M. WOOD, in his official capacity as Director of Appeals – United States Department of Agriculture; and JAMIE WHITE, in her official capacity as Acting State Executive Director;<br><br>    Defendants. | 4:21-CV-04077-KES<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FOR LACK OF JURISDICTION, GRANTING JUDGMENT ON THE PLEADINGS ON COUNT TWO, AND GRANTING SUMMARY JUDGMENT ON COUNT ONE** |

   This matter is before the court on defendants' motion to dismiss for lack of jurisdiction, motion for judgment as a matter of law, or in the alternative, motion for summary judgment. Docket 19. Plaintiffs, Gregory Kroupa and Wendy Kroupa, oppose the motion and submit a cross-motion for summary judgment. Docket 22, 24. For the following reasons, the court grants in part and denies in part defendants' motion to dismiss for lack of jurisdiction, grants defendants' motion for judgment as a matter of law on Count 2 of the amended complaint (Docket 9), and grants defendants' motion for summary judgment.

**Background**

I.  **Regulatory Framework**

The Livestock Immunity Program (LIP) compensates livestock owners for "eligible livestock deaths in excess of normal mortality" caused by an eligible cause of loss, such as adverse weather. 7 C.F.R. § 1416.301(b) (2019)[1]; *see also* § 1416.302 ("Eligible adverse weather event means extreme and abnormal damaging weather . . . includ[ing] winter storm . . . [or] blizzards."). "The eligible cause of loss is one . . . that directly results in the death of livestock . . . despite the livestock owner's performance of expected and normal preventative or corrective measures and acceptable animal husbandry practices." § 1416.301(b). Livestock that die or are injured for reasons not considered an eligible loss condition do not qualify for compensation under the LIP. § 1416.304(f).

To receive compensation through LIP, a livestock producer must submit notice of loss to the Farm Service Agency (FSA) with "documentation acceptable to FSA substantiating that the claimed eligible loss condition occurred and was responsible for eligible losses." 7 C.F.R. § 1416.305(a). "For death losses . . . the participant must provide adequate proof that the death . . . occurred as a direct result of an eligible loss condition, as opposed to any other possible or potential cause of loss." § 1416.305(e). The LIP regulations outline three

---

[1] Because the cause of action in this case arose in April 2019, the court uses the regulations that were in effect at that time. In February 2020, 7 C.F.R. § 1416 was updated to the current version, which contains several changes to the language of the regulations. *Compare* 7 C.F.R. § 1416.305 (2019) *and* 7 C.F.R. § 1416.305 (2022).

alternative methods to provide adequate proof of eligible death. First, the death loss can be established by verifiable records of loss, such as "[p]urchase records; veterinarian records; bank or other loan papers; rendering-plant truck receipts; Federal Emergency Management Agency records; National Guard records; written contracts; production records; Internal Revenue Service records; property tax records; private insurance documents; and other similar verifiable documents as determined by FSA." § 1416.305(e). Second, if adequate verifiable records of loss are not available, then the applicant may supply "reliable records, in conjunction with verifiable beginning and ending inventory records . . . Reliable records may include contemporaneous producer records, dairy herd improvement records, brand inspection records, vaccination records, dated pictures, and other similar reliable documents as determined by FSA." § 1416.305(f). Third, if reliable proof of death records are not available, the applicant may submit "[c]ertification of livestock deaths . . . by third parties . . ." in conjunction with verifiable beginning and ending inventory records, so long as "both of the following conditions are met:

> (1) The livestock owner . . . certifies in writing: that there is no other verifiable or reliable documentation of death available; the number of livestock, by category identified in this subpart and by FSA were in inventory at the time the eligible adverse weather event occurred; [t]he physical location of the livestock, by category, in inventory when the deaths occurred; and other details required for FSA to determine the certification acceptable; and
> (2) The third party is an independent source who is not affiliated with the farming operations such as a hired hand and is not a 'family member,' as defined as a person whom a member in the farming operation or their spouse is related as lineal ancestor, lineal descendant, sibling, spouse, and provides their telephone number, address, and a written statement containing specific details about: their knowledge of the livestock deaths; their affiliation with the

3

> livestock owner; the accuracy of the deaths claimed by the livestock owner . . . including, but not limited to, the number and kind or type of the participants livestock that died because of the eligible adverse weather event; and other information required by FSA to determine the certification acceptable."

§ 1416.305(h) (cleaned up).

## II.     Factual Background

Plaintiffs, Gregory Kroupa and Wendy Kroupa, own a cow-calf operation on 6,500 acres of land in Aurora and Brule Counties near White Lake, South Dakota. Docket 21 ¶ 1; Docket 23 ¶ 1. From April 10, 2019 to April 12, 2019, a blizzard occurred in the area, resulting in impassable roads and loss of livestock. Docket 21 ¶ 2-3; Docket 23 ¶ 2-3. The roads remained impassable after the blizzard, and the deceased livestock at issue remained frozen and covered by snow. Docket 16-1 at 10. Kroupas contacted a rendering company to count their cow/calf loss, but the rendering company was unable to fulfill the request due to the unusually high demand for services caused by the blizzard. Docket 21 ¶ 4; Docket 23 ¶ 4. Kroupas then contacted FSA for guidance. Docket 21 ¶ 5; Docket 23 ¶ 5. An unnamed FSA representative instructed Kroupas to have their veterinarian complete a third-party certification of loss. Docket 21 ¶ 6; Docket 23 ¶ 6. Kroupas' veterinarian came to the farm and observed piles of deceased cows and calves. Docket 16-2 at 3. The veterinarian did not count the deceased livestock himself and estimated

that he personally observed 30-35 deceased cows and 30-35 deceased calves. *Id.*

In December 2019, Kroupas submitted a notice of loss and supporting documentation to the FSA. Docket 21 ¶ 7; Docket 23 ¶ 7. To support their claim for 77 cow deaths, Kroupas provided purchase documents of the cow beginning inventory and a handwritten count of the death loss. Docket 21 ¶ 8; Docket 23 ¶ 8. To support their claim for 66 calf deaths, Kroupas provided combined calving, pregnancy check, and ultrasound records of the calf beginning inventory and a handwritten count of the death loss. Docket 21 ¶ 9; Docket 23 ¶ 9 (agreeing to list of records provided, but contesting their categorization as not verifiable). Kroupas also provided the veterinarian's third-party certification of a 77-cow and 66-calf death loss, photographs of dead livestock, and a letter from their lender, which stated that the Kroupas' completed balance sheets showed 70 more bred cows on December 18, 2018 than on January 15, 2020. Docket 21 ¶¶ 10-11; Docket 23 ¶¶ 10-11.

### III.  Procedural History

Kroupas' application for relief under the LIP was first considered by the FSA County Committee. Docket 21 ¶ 13; Docket 23 ¶ 13. The County Committee denied Kroupas' claim in its entirety. Docket 21 ¶ 14; Docket 23 ¶ 14. It cited the veterinarian's failure to count the deceased livestock, the fact that Kroupas' claimed losses were not comparable to others suffered in the area, and Kroupas' livestock management practices as reasons for the denial. Docket 21 ¶ 14; Docket 23 ¶ 14.

Kroupas appealed the County Committee's decision to the FSA State Committee. Docket 21 ¶ 15; Docket 23 ¶ 15. In March 2020, the State Committee met to discuss the Kroupas' application. Docket 21 ¶ 16; Docket 23 ¶ 16. The State Committee similarly found Kropuas' documentation to be inadequate to support their death loss claims. Docket 21 ¶ 19; Docket 23 ¶ 19. The State Committee relied on the veterinarian's failure to count each deceased animal when it denied full relief but accepted his testimony as to a 35-cow and 35-calf loss. Docket 21 ¶¶ 20-21; Docket 23 ¶¶ 20-21. The State Committee awarded partial relief on that basis and concluded that the losses were not related to Kroupas' management practices. Docket 21 ¶¶ 21-23; Docket 23 ¶¶ 21-23.

Kroupas then appealed the State Committee's decision to the National Appeals Division. Docket 21 ¶ 24; Docket 23 ¶ 24. After an evidentiary hearing, an Administrative Law Judge (ALJ) found that the two committee rulings on Kroupas' claim had been erroneous, and that Kroupas provided "very good" reliable proof of death in the form of calving records, ultrasound records, and pictures. Docket 21 ¶¶ 25-27; Docket 23 ¶¶ 25-27. The ALJ further found that using a third-party certification to reduce Kroupas' claimed cow death loss was erroneous given that Kroupas submitted verifiable beginning and ending inventory documentation, and a reliable death loss documentation. Docket 21 ¶ 28; Docket 23 ¶ 28. Based on these findings, the ALJ awarded compensation for the loss of 77 cows. Docket 21 ¶ 29; Docket 23 ¶ 29.

The ALJ also found that the committees were correct in determining that Kroupas' proof, without third-party certification, did not support their claimed 66-calf death loss. Docket 21 ¶ 30; Docket 23 ¶ 30. But the ALJ held that the committees abused their discretion when they arbitrarily rejected Kroupas' third-party certification for the 66-calf death loss. Docket 21 ¶ 32; Docket 23 ¶ 32. The ALJ awarded compensation for the 66 calves, granting Kroupas' entire claim. Docket 21 ¶¶ 29, 33; Docket 23 ¶¶ 29, 33.

The FSA then filed a request for review of the determination of the ALJ to the Appeals Division Director. Docket 21 ¶ 34; Docket 23 ¶ 34. The Director, Frank Wood, upheld the award for the 77 cows, but found that the ALJ erred in concluding that Kroupas established adequate proof of death for the 66-calf death loss because Kropuas did not present verifiable beginning and ending inventory data. Docket 21 ¶¶ 35-38; Docket 23 ¶¶ 35-38. Director Woods reduced the award for loss of calves from 66 calves to 35 calves. Docket 21 ¶ 42; Docket 23 ¶ 42.

Following the adverse ruling by the Appeals Division Director, Kroupas filed a complaint in the District of South Dakota alleging two counts for relief. Docket 9. Count One alleges that the Appeals Division Director erred in denying them full relief on their LIP claim. *Id.* at 3. Count Two challenges the constitutionality of 7 C.F.R. § 11 under the due process clause of the Fourteenth Amendment of the United States Constitution. *Id.* at 4. Kroupas request the following: an order "[a]ffirming the Decision of the Administrative Law Judge which awarded [them] the full value permitted under the LIP

7

regulations of 77 Cows and 66 Calves plus interest; $25,000 in actual damages and $100,000 in punitive damages;" an order "[d]eclaring 7 C.F.R. § 11 Unconstitutional per the Due Process Clause of the 14th Amendmnet; [r]easonable attorney's fees, costs and disbursements (including sales tax thereon); and [a]ny and all other awards this Court deem[s] necessary and just." *Id.* at 5.

Defendants then moved to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) or, in the alternative, moved for summary judgment under Federal Rule of Civil Procedure 56. Docket 19. Kroupas oppose the motion and move for summary judgment. Dockets 22, 24, 26.

## Discussion

### I. Jurisdiction

#### A. Legal Standard

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, the existence of jurisdiction is a "threshold inquiry" to be decided in every federal case. *Crow Creek Sioux Tribe v. Bureau of Indian Affs.*, 463 F. Supp. 2d 964, 967 (D.S.D. 2006) (citation omitted). "Jurisdictional issues are for the court to decide and the court has broad power to decide its own right to hear a case." *Id.* When a party asserts federal question jurisdiction, as in this case, "[t]he presence or absence of . . . jurisdiction is governed by the 'well-pleaded complaint rule,'

8

which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936)). Because the suit is one against an official of the United States government acting in his official capacity, that jurisdiction must include a waiver of sovereign immunity. *See United States v. Mitchell*, 445 U.S. 535 (1980). "The party seeking to invoke federal jurisdiction . . . carries the burden, which may not be shifted to another party." *Jones v. United States*, 727 F.3d 844, 846 (8th Cir. 2013) (citation omitted).

In challenging subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a party "must attack either the facial or factual basis for jurisdiction." *Middlebrooks v. United States*, 8 F. Supp. 3d 1169, 1173 (D.S.D. 2014) (citation omitted).

> A facial challenge requires the court to examine the complaint and determine if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, and the nonmoving party receives the same protections as it would if defending a motion to dismiss under Rule 12(b)(6). A factual attack challenges the factual basis for subject matter jurisdiction, and the court considers matters outside the pleadings without giving the nonmoving party the benefit of the Rule 12(b)(6) safeguards.

*Id.* (internal citation omitted). Because Defendants do not challenge the facts underlying the jurisdictional claim, the court construes the challenge as facial and thus construes all factual allegations in favor of plaintiffs.

## B. Discussion

Defendants argue that this court lacks jurisdiction over Kroupas' claims because this court cannot grant Kroupas' requested relief because the United States has not waived sovereign immunity as to money damages. Docket 20 at 11-12. Specifically, defendants contend that Kroupas' claims arise under 5 U.S.C. §§ 702-706, commonly called the Administrative Procedure Act (APA), that Kroupas are requesting money damages, and that money damages are prohibited by the APA. *Id.* Defendants further contend that Kroupas' request for an order "Affirming the Decision of the Administrative Law Judge which awarded Kroupa the full value permitted under the LIP regulations of 77 Cows and 66 Calves plus interest" is similarly prohibited. *Id.* at 12.

Kroupas focus their response on establishing the elements of standing and on their exhaustion of administrative remedies, neither of which is contested by defendants. Docket 24 at 5-8; Docket 25 at 2. Kroupas also reiterate their claim of a Fourteenth Amendment violation. Docket 24 at 9.

For this court to have jurisdiction over Kroupas' claims, Kroupas must allege a basis for jurisdiction in their "well-pleaded complaint." *Caterpillar Inc.*, 482 U.S. at 392 (citation omitted). In cases against the United States or its officials, jurisdiction must include both a waiver of sovereign immunity and an underlying statutory or constitutional basis. Here, the court finds, and the parties do not contest, that a statutory basis exists for Kroupas' claims. Count One, alleging that Director Woods' administrative decision was arbitrary and capricious, rests on 5 U.S.C. § 704. *See* Docket 9 ¶ 23 (basing relief on "5

10

U.S.C. § 702 and related statutes"). Count Two, alleging a violation of due process, rests on the Fourteenth Amendment of the United States constitution. Docket 9 at 4. 28 U.S.C. § 1331 authorizes the federal district courts to hear such causes of action, which arise under federal law. Thus, at issue is only whether an adequate waiver of sovereign immunity exists to authorize the Kroupas' claims.

Kroupas' amended complaint asserts that "5 U.S.C. § 702 and related statutes" authorize the court to hear their claims. Docket 9 ¶ 23. Section 702 waives sovereign immunity for claims against the United States seeking relief other than money damages. Though the section was passed as part of the APA, the waiver of sovereign immunity is not restricted to claims under that Act. *See Red Lake Band of Chippewa Indians v. Barlow*, 846 F.2d 474 (8th Cir. 1988). Instead, "the waiver of sovereign immunity contained in section 702 . . . is dependent on the suit against the government being one for non-monetary relief." *Id.* at 476.

To the extent that Kroupas are requesting money damages, the relief must be dismissed under 5 U.S.C. § 702. As such, the court denies Kroupas' request for "$25,000 in actual damages and $100,000 in punitive damages" and for "reasonable attorneys fees, costs and disbursements." Docket 9 at 5. Kroupas' requests for relief other than money damages, however, survive the jurisdictional review. *See McKoy v. Spencer*, 271 F. Supp. 3d 25, 31 (D.D.C. 2017). The court must then decide whether the remaining requests, one for a

11

declaration that 7 U.S.C. § 11 is unconstitutional and one for an affirmation reinstating the ALJ's award, are for money damages.

Though either request for relief, if granted, could result in Kroupas receiving money, "[t]he fact that a judicial remedy may require one party to pay money to another is not sufficient reason to characterize the relief as 'money damages.' " *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988). Instead, the court must consider whether the request is one for specific relief or for a monetary substitute of "that which ought to have been done." *Id.* at 910. Here, both requests ask the court for specific relief: Kroupas are not asking for a substitution, but for the reinstatement of that to which they believe themselves entitled. Therefore, Kroupas request a declaration that 7 U.S.C. § 11 is unconstitutional and an affirmation reinstating the ALJ's award.

Kroupas attempt to save their claims for damages by arguing that the Tucker Act provides this court jurisdiction to award damages. Docket 26 at 6. Kroupas do not cite the Tucker Act in their amended complaint, but instead first raise the argument in their reply. *Id.*; Docket 9. As such, the court cannot consider the Tucker Act in deciding whether subject matter jurisdiction was alleged in a well-pleaded complaint. But even if the court could consider the Tucker Act, it does not waive sovereign immunity for an award of money damages by this court. As Kroupas themselves articulate, the Tucker Act creates exclusive jurisdiction in the Court of Claims for certain monetary claims against the government. Docket 26 at 5-6. Because this is a federal district court and not the Court of Claims, the Tucker Act does not create

subject matter jurisdiction for the award of money damages. *See V S Ltd. P'ship v. Dep't of Hous. & Urb. Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (holding that the Court of Claims, and not a federal district court, has exclusive jurisdiction over claims under the Tucker Act).

Thus, defendants' motion to dismiss for lack of jurisdiction is granted to the extent Kroupas request money damages and denied as to the requests for specific relief.

## II. Judgment on the Pleadings

### A. Legal Standard

The court next considers defendants' motion for judgment on the pleadings. "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)). When evaluating a motion for judgment on the pleadings, the district court must "accept as true all factual allegations set out in the complaint" and to "construe the complaint in the light most favorable to the [non-moving parties], drawing all inferences in [their] favor." *Id.* (second alteration in original opinion) (citation omitted). "When considering a motion for judgment on the pleadings . . . the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint,

13

as well as materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (internal quotations omitted).

**B. Discussion**

Defendants contend that they are entitled to judgment on the pleadings on Count Two of the complaint because Count Two arises under the Fourteenth Amendment of the United States Constitution and the Fourteenth Amendment does not apply to federal actors. Docket 20 at 12. Alternatively, defendants argue that, even if the court were to construe the complaint as arising under the Fifth Amendment, Kroupas' claim fails as a matter of law because they have not alleged a violation of due process. *Id.* at 12-13.

Kroupas allege that judgment on the pleadings is inappropriate because there is a dispute of material fact. Docket 24 at 8. But Kroupas do not cite any specific fact in dispute, instead relying on conclusory statements. *Id.* Kroupas also state that "some governmental benefits . . . amount to 'property' with due process protections" and that the fourth level of administrative review authorized by 7 C.F.R. § 11 violates their procedural due process. Docket 26 at 6-7 (citing *Goldberg v. Kelly*, 397 U.S. 254 (1970)).

It is well established that the due process clause of the Fourteenth Amendment applies only to the states, and not to the federal government. U.S. Const. amend XIV; *United States v. Morrison*, 529 U.S. 598, 621 (2000) ("[T]he Fourteenth Amendment, by its very terms, prohibits only state action."). Thus,

the court finds that any due process challenge to federal government action under that amendment must fail.

Even if the court were to construe Kroupas' complaint as arising under the Fifth Amendment, Kroupas have not explained how the agency action violated their due process rights. At its most fundamental level, procedural due process requires notice and "the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation omitted). Taking the facts in a light most favorable to Kroupas, the allegations in the complaint clearly demonstrate that Kroupas were on notice of multiple opportunities to be heard and that they did indeed present their arguments on those occasions. Docket 9 ¶ 14-21 (describing Kroupas' involvement with the administrative review process). Thus, the court finds that Kroupas failed to allege a violation of the Fourteenth Amendment's due process clause and grants judgment on the pleadings in favor of defendants on Count Two. Count One of the amended complaint survives for review under summary judgment.

## III. Summary Judgment

### A. Legal Standard

Generally, a motion for summary judgment may be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a mater of law." Fed. R. Civ. P. 56(a). The factual "dispute must be outcome determinative under prevailing law" to be material; any lesser dispute does not rise to the level of materiality and will not

preclude summary judgment. *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) (internal quotation omitted).

Because this case concerns the court's review of an administrative decision, the general standard set forth in Federal Rule of Civil Procedure 56 does not apply. Instead, the court applies the standards articulated by the APA. *Voyageurs Nat'l Park Ass'n v. Norton*, 381 F.3d 759, 763 (8th Cir. 2004); 5 U.S.C. § 706.

> Specifically, a motion for summary judgment . . . makes no procedural sense when a district court is asked to undertake judicial review of administrative action. Such a motion is designed to isolate factual issues on which there is no genuine dispute, so that the court can determine what part of the case must be tried to the court or a jury. Agency action, however, is reviewed, not tried. Factual issues have been presented, disputed, and resolved; and the issue is not whether the material facts are disputed, but whether the agency properly dealt with the facts.

*Bettor Racing, Inc. v. Nat'l Indian Gaming Com'n*, 47 F. Supp. 3d 912, 918 (D.S.D. 2014) (alternation in original) (citing *Lodge Tower Condo. Ass'n v. Lodge Props., Inc.*, 880 F. Supp. 1370, 1374 (D. Colo. 1995)). The court's review of the agency record is "searching and careful." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). But the "review of an agency decision is limited. [The court is] only permitted to set aside agency action that is 'arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law.' " *Voyageurs Nat'l Park Ass'n*, 381 F.3d at 763 (citing 5 U.S.C. § 706(2)(A)).

An agency decision is "arbitrary and capricious" if

> [T]he agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L.Ed. 2d 443 (1983). Otherwise, "[i]f an agency's determination is supportable on any rational basis, we must uphold it. This is especially true when an agency is acting within its own sphere of expertise." *Voyageurs Nat'l Park Ass'n*, 381 F.3d at 763 (citations omitted). The court also accords "substantial deference to an agency's interpretation of its own regulation." *South Dakota v. U.S. Dep't. of Interior*, 423 F.3d 790 (8th Cir. 2005).

Even so, "[t]he agency must articulate a 'rational connection between the facts found and the choice made.'" *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). A reviewing court cannot "supply a reasoned basis for the agency's action that the agency itself has not given," but may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* at 285–86 (internal citation omitted).

### B. Discussion

Kroupas' sole contention is that Director Woods acted arbitrarily and capriciously by reducing their loss reimbursement by 31 calves. They argue that they provided "verifiable inventory established by Lisa Reuland at FSA" and that they are entitled to compensation for the entirety of their claimed loss. Docket 22-1 at 4.

Defendants argue that Director Woods' decision was supported by substantial evidence in the record and that it should be upheld. Docket 25 at 4-5. Specifically, defendants contend that the documents supplied by Kroupas constitute "reliable," but not "verifiable" records. *Id.* at 5. Thus, Kroupas did not qualify for compensation for the entirety of the loss under the LIP.

As described above, the LIP provides three methods for demonstrating loss. A claimant may file: (1) verifiable records of loss, (2) reliable records of loss along with verifiable beginning and ending inventory, or (3) third-party certification of loss along with verifiable beginning and ending inventory. 7 C.F.R. § 1416.305. To support their claim, Kroupas submitted combined calving, pregnancy check, and ultrasound records to establish beginning inventory and a handwritten death-loss account to establish ending inventory, as contemplated by the third category of filings. Docket 16-1 at 11-12. Because all parties agree to the validity of the third-party certification, at issue in this case is only whether Director Woods was arbitrary or capricious in finding the beginning inventory records submitted by Kroupas for their calf loss as reliable instead of verifiable.

The LIP provides that "[r]eliable records may include contemporaneous producer records, dairy herd improvement records, brand inspection records, vaccination records, dated pictures, and other similar reliable documents as determined by the FSA." § 1416.305(f). Verifiable records, by contrast, include "[p]urchase records; veterinarian records; bank or other load papers; rendering-plant truck receipts; Federal Emergency Management Agency

18

records; National Guard records; written contracts; production records; Internal Revenue Service records; property tax records; private insurance documents; and other similar verifiable documents as determined by the FSA." § 1416.305(e).

Director Woods reviewed Kroupas' records and found them to be reliable, but not verifiable. Docket 16-1 at 14. Though not definitively explained in Director Woods' holding, defendants assert this is because the records are "contemporaneous producer records," and thus fall under § 1416.305(f)'s definition of reliable records. Docket 20 at 15. Kroupas disagree with the categorization of the documents as contemporaneous producer records and argue that they are, indeed, verifiable. But they do not point to any provision in § 1416.305(e). Instead, Kroupas claim that the inventory was verified by Lisa Reuland at FSA. Docket 22-1 at 4. Kroupas make no argument to support their contention that Reuland has the authority to unilaterally verify the records. Furthermore, the assertion appears unsupported by the record. After a careful review, the court finds only two mentions of Reuland in the record. The first notes her presence at the County Committee meeting, and the second appears on a copy of handwritten notes from that meeting. Docket 16-3 at 17, 19. Without any further legal or factual development, the bare assertion that Reuland verified the document does not demonstrate that Director Woods' decision was arbitrary or capricious.

Rather, Director Woods' decision was supported by the natural language of the regulation and by the record as a whole. Though Director Woods never

19

explicitly stated the records were contemporaneous producer records, that conclusion can be reasonably inferred both by the decision as a whole and by the copies of the records, which appear to be handwritten by Kroupas. Docket 16-1, 16-2, 16-3. Though third-party certification was provided by the veterinarian, this alone is not adequate to establish loss under the regulations. *See* § 1416.305. As the veterinarian testified on multiple occasions, he did not personally observe the full loss, nor did he count the deceased livestock that he did observe. Docket 16-1, 16-3. Given the lack of factual or legal support for Kroupas' argument, the court finds that Director Woods was reasonable in his interpretation of the regulations and in his decision to limit Kroupas' recovery to the thirty-five calves personally witnessed by the certifying veterinarian.

## CONCLUSION

Because the Fourteenth Amendment does not apply to federal actors and because Director Woods' decision to limit Kroupas' recovery is neither arbitrary nor capricious, it is

ORDERED that Count Two of the amended complaint is dismissed with prejudice and that defendants' motion for summary on Count One is granted.

DATED September 28, 2022

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE